Filed 1/15/26  P. v. Lara CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JESUS ISRAEL LARA,<br><br>　　Defendant and Appellant. | G064109<br><br>(Super. Ct. No. 94CF3382)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Lewis W. Clapp, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

In 1996, a jury convicted Jesus Israel Lara of, among other things, the murder of Juan Granados and attempted murder of Enrique Granados.[1] In October 2022, Lara filed a petition for resentencing under Penal Code section 1172.6.[2] Following an evidentiary hearing based on the transcript of the original trial, the trial court denied Lara's petition. On appeal, Lara argues the court should have excluded testimony from an officer recounting a statement made by Enrique while in an emergency room after being shot. We disagree. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE INFORMATION

In a 1995 information, Lara was charged with five counts. Count 1 alleged the murder of Juan (§ 187, subd, (a)); counts 2 and 3 alleged second degree robbery (§§ 211, 212.5, subd. (b), 213, subd. (a)(2)); count 4 alleged the attempted murder of Enrique (§§ 664, 187, subd. (a)); and count 5 alleged street terrorism (§ 186.22, subd. (a)). The information also alleged a felony-murder special circumstance for the murder of Juan under section 190.2, subdivision (a)(17)(i). The information further alleged Lara committed the crimes alleged in counts 1 to 4 for the benefit of a criminal street gang, he inflicted great bodily injury upon Enrique during the

---

[1] Because Juan and Enrique Granados share the same last name, we refer to them by their first names for clarity.

[2] All undesignated statutory references are to the Penal Code. Lara's petition cited former section 1172.95, but "[e]ffective June 30, 2022, . . . section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)" (*People v. Saavedra* (2023) 96 Cal.App.5th 444, 446, fn. 1.) In this opinion, we generally refer to the current Penal Code section.

attempted murder, and he personally used a firearm during all the alleged crimes. (§§ 186.22, subd. (b), 12022.7, 1203.06, subd. (a)(1), 12022.5, subd. (a).)

## II.

### THE TRIAL AND PRIOR APPEAL

Following a mistrial, the case proceeded to a jury trial in September 1996, at which numerous witnesses testified. Among them was police officer Daniel Beaumarchais, who first responded to the scene. Beaumarchais testified he responded to a call of shots fired early in the morning on January 23, 1994. He saw a truck in the alley and two individuals, Juan and Enrique, lying face up on the ground. Enrique had a gunshot wound to the stomach and Juan had three gunshot wounds; both men appeared to be conscious. Paramedics transported them to two different hospitals.[3] Five bullet casings were found at the scene that appeared to be the same ammunition.

J.S. testified he, Juan, and Enrique had been driving to where Enrique lived. But their truck ran out of gas in the alley and, after pouring some gas into the tank, J.S. and Enrique pushed the truck, with Juan in the driver's seat. While J.S. was still outside of the truck, a man came up to him, put a gun to his head, demanded his money, and took money from his wallet. The man then took Enrique's wallet. Juan got out of the truck and told the man he already had the money and not to shoot, but he nevertheless started shooting. J.S. said Juan was hit by the gunfire, and when Enrique ran to Juan, he was also hit. J.S. noticed another man at the entrance to the alley,

---

[3] Juan subsequently bled to death as a result of the gunshot wound to his abdomen.

who then ran away with the shooter. J.S. could not see either of the two men well, but he said the nonshooter's build was similar to defendant Lara's, whereas the gunman "was a little bit thinner."

Tony Avila is another police officer who responded to the alley that morning. He testified that, by the time he arrived, the paramedics were beginning to load the victims into an ambulance to transport them to the hospital. Avila speaks fluent Spanish and was dispatched to the scene because there was a need for a Spanish speaking officer. Avila spoke to J.S. at the scene and then went to the hospital to speak with Enrique. Avila said he spoke to Enrique "maybe an hour, hour and 15 minutes after arriving at the scene," while Enrique was lying on a gurney in the emergency room and blood was still visible in his stomach area. Avila said Enrique was "alert, conscious[,] and able to answer [his] questions," although he was "sure [Enrique] had some pain."

Avila testified he asked Enrique what had happened, and Enrique told him the following.[4] Enrique said there were two individuals, one who approached the truck with a gun and another who was approximately 100 feet away. The individual that came to the truck had a silver semi-automatic gun, put the gun to J.S.'s back, and robbed him. Then the gunman pointed the gun at Enrique and demanded Enrique's wallet, and Enrique surrendered it. Juan exited the truck and walked toward them, and the gunman fired at Juan. The gunman then began to run away, but the person

---

[4] Enrique did not testify at trial; he apparently died prior to trial in an unrelated accident. Lara objected to the testimony regarding what Enrique had told Avila, and the prosecution argued it should be admitted under Evidence Code section 1240 (which provides an exception to the hearsay rule for spontaneous statements). The trial court overruled Lara's objection.

at the entrance to the alley said "'[s]hoot him or they'll know us,'" and the gunman then turned and fired the shot that hit Enrique. Enrique could not provide a description of the person at the entrance of the alley.[5]

Additionally, there was testimony and videos played to the jury regarding Lara's interaction with a confidential informant during an undercover drug operation that occurred in the days after the shooting on January 24 and January 26, 1994. Lara told the informant, among other things, "I killed a guy," and that he had shot two people when he tried to rob them and one of the guys had pulled out a gun. Additionally, Lara gestured to the alley where the shooting occurred and told the confidential informant that is where he "killed the guy."

The jury convicted Lara on all counts. It also found true the gang allegations and the special circumstance of murder while engaged in the commission of a robbery. The jury, however, found not true the allegations Lara personally used a firearm and personally inflicted great bodily injury. The court sentenced Lara to life without the possibility of parole for special circumstances murder, and it stayed the sentence on the other counts and enhancements.

Lara appealed, and a panel of this court affirmed the judgment. (*People v. Lara* (May 22, 1998, G020937) [nonpub. opn.].) Among other things, the court concluded the trial court did not abuse its discretion in admitting Enrique's statement to Avila at the hospital under Evidence Code section 1240. (*People v. Lara, supra*, G020937.)

---

[5] Avila documented Enrique's statements in a report he later prepared at the police station.

III.

THE PETITION UNDER SECTION 1172.6

In October 2022, Lara filed a petition for resentencing. The prosecution and Lara each filed briefs addressing whether Lara had made a prima facie showing for relief. In March 2023, the trial court found Lara had made a prima facie showing and issued an order to show cause.

In April 2024, Lara filed a brief in advance of the evidentiary hearing.[6] He argued, among other things, Enrique's statement to Avila in the emergency room should have been excluded because it violated the Confrontation Clause of the Sixth Amendment of the United States Constitution and, additionally, it did not qualify as a spontaneous statement under Evidence Code section 1240. The prosecution filed its own pre-hearing brief, as well as a reply to Lara's brief. It disputed Lara's argument that Enrique's emergency room statement to Avila should have been excluded.

In May 2024, the trial court held an evidentiary hearing, at which the prosecution conceded Lara was not the shooter. The court received into evidence Lara's exhibits and the prosecution's exhibits (which included the reporter's transcript and a portion of the clerk's transcript from Lara's direct appeal). The court found the admission of Enrique's emergency room statement to Avila did not violate the Confrontation Clause because "the officers needed to get more information to meet an ongoing emergency" and the statement was admissible under Evidence Code section 1240. The court also found Lara was in the alley given the amount of information he had about the shooting, even though some of his statements to the confidential

_____

[6] Lara submitted as exhibits Avila's report and transcripts from police interviews with Enrique that took place on January 24 and January 26, 1994.

6

informant were not accurate. The court explained Enrique's statement establishes Lara possessed the requisite intent to be convicted of murder and attempted murder under current law. The court further noted "it would be on the theory of being an aider and abett[or] who acted with intent to kill, and also as being a major participant in the underlying felony who acted with reckless indifference." The court denied Lara's petition for resentencing.

Lara appeals from the denial of his petition.

## DISCUSSION

### I.

### SECTION 1172.6

"Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 . . . . The Legislature amended sections 188 and 189, which substantially narrowed the liability of accomplices to murder: 'It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability.'" (*People v. Ramos* (2025) 112 Cal.App.5th 174, 183 (*Ramos*).) "'With this purpose in mind, [the Legislature] "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."'" (*Ibid.*) "The Legislature also added former section 1170.95, which created a process for those convicted of murder under now obsolete accomplice liability theories to seek vacatur and resentencing. Effective January 1, 2022, the Legislature revised former section 1170.95 through the passage of Senate Bill No. 775 (2021–2022 Reg. Sess.) . . . . Petitioners who were convicted of

7

attempted murder and manslaughter under now obsolete theories may also seek relief." (*Ibid.*)

As our Supreme Court has explained, "the path to resentencing under section 1172.6 involves three stages. It begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*People v. Patton* (2025) 17 Cal.5th 549, 562.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) Section 1172.6, subdivision (d)(3) further provides: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any

8

allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

Generally, we review a trial court's """"factual findings for substantial evidence and the application of those facts to the statute de novo""""" in determining whether the court erred in denying a section 1172.6 petition after an evidentiary hearing. (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.) "Issues of statutory interpretation are pure questions of law that we review de novo." (*Ramos, supra,* 112 Cal.App.5th at p. 182.) Additionally, "we independently review whether a statement was testimonial so as to implicate the constitutional right of confrontation." (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1466 (*Nelson*).)

II.

LARA'S ARGUMENTS ON APPEAL

*A. Enrique's Emergency Room Statement*

On appeal, Lara argues the trial court erred in admitting Avila's testimony regarding Enrique's statement in the emergency room because (1) it was not a spontaneous statement under Evidence Code section 1240, and (2) its admission violated the Confrontation Clause. We reject both arguments.

1. Spontaneous Statement Exception to Hearsay Rule

"Hearsay evidence is generally 'understood as an out-of-court statement offered for the truth of its content.' [Citation.] Hearsay evidence is normally excluded under the hearsay rule. [Citation.] However, there are numerous exceptions to the hearsay rule within the Evidence Code, and there are other hearsay exceptions located outside of the Evidence Code." (*Ramos,*

*supra*, 112 Cal.App.5th at p. 188.) Evidence Code section 1240 provides one such exception for spontaneous statements.

Lara argues Enrique's statement in the emergency room is not admissible under Evidence Code section 1240. According to Lara, Enrique's statement was made "in response to police questioning" and not spontaneously, and "although the statements by Enrique pertained to the shooting that had previously occurred, it is clear that they came several hours after the shooting and only after Enrique had both the time and opportunity to reflect upon the incident." (Underscoring omitted.) As noted above, a panel of this court determined on Lara's direct appeal the trial court did not abuse its discretion in admitting Enrique's statement under Evidence Code section 1240. (*People v. Lara, supra*, G020937.)

Lara's argument on this appeal fails because he has not asserted (much less shown) that the law regarding the spontaneous statement exception to the hearsay rule has changed since this issue was decided during his trial and on direct appeal.[7] "Under section 1172.6, subdivision (d)(3), evidence from 'any prior hearing or trial' may be admitted at the evidentiary

---

[7] Lara appears to assert the prosecution failed to argue at the evidentiary hearing that Lara could not relitigate the admissibility of Enrique's statement under Evidence Code section 1240. Our review of the briefing, however, shows the prosecution did sufficiently raise this issue in the trial court. In its reply to Lara's brief, the prosecution included a section arguing "the issue of spontaneity was decided by the Court of Appeal, and no authority has been cited that gives this court authority to disregard that ruling." (Boldface and some capitalizations omitted.) In that same section, the prosecution "acknowledge[d] that had there been a change in the law between the court's exercise of its direction in 1996 and the present day in 2024, this [c]ourt would be charged with determining if the evidence would be admissible under the current law," but it asserted Lara "provides no authority for the proposition that the law of spontaneity has changed."

hearing, with a restriction that the evidence must also be 'admissible under current law.'" (*Ramos, supra*, 112 Cal.App.5th at p. 184, italics omitted.) "That is, there may be some evidence that was admitted at a prior hearing or trial that would *not* be admissible under current law due to intervening changes in the law. (See, e.g., *People v. Sanchez* (2016) 63 Cal.4th 665, 686 . . . [under current law, a gang expert cannot relate case-specific hearsay to support the expert's opinion].)" (*Ibid.*) Thus, although there may be instances where testimony previously admitted would no longer be admissible because of an intervening change in law, Lara has not shown there was any intervening change in the law regarding Evidence Code section 1240. Lara cannot relitigate whether the court at his trial and the prior panel of this court on the direct appeal erred in concluding Enrique's statement was admissible under Evidence Code section 1240.

2. Confrontation Clause

Lara argues the admission of Enrique's statement in the emergency room violates the Confrontation Clause of the Sixth Amendment of the United States Constitution,[8] which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Unlike his argument regarding spontaneous statements, Lara does point to an intervening change in law regarding the confrontation clause—specifically, *Crawford v. Washington* (2004) 541 U.S. 36, which was decided after Lara's trial and direct appeal.

"The *Crawford* court "'dramatically departed'" from confrontation clause precedent, which had generally permitted statements of unavailable

_____

[8] Lara also refers to the California Constitution but includes no separate analysis of its provisions or their application here.

11

witnesses to be admitted at trial so long as these statements were reliable enough." (*People v. Tran* (2022) 13 Cal.5th 1169, 1195.) Instead, "*Crawford* held the confrontation clause 'prohibits "admission of *testimonial* statements of . . . witness[es] who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."'" (*People v. Chism* (2014) 58 Cal.4th 1266, 1288 (*Chism*).)

In *Davis v. Washington* (2006) 547 U.S. 813, the United States Supreme Court elaborated on what constitutes a testimonial statement: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Id.* at p. 822.) As the California Supreme Court has noted, the United States Supreme Court "has emphasized that '"not all those questioned by the police are witnesses" for purposes of the Sixth Amendment and not all '"interrogations by law enforcement officers' [citation], are subject to the Confrontation Clause.'"" (*Chism, supra*, 58 Cal.4th at pp. 1288–1289.)

"Although the court in *Crawford* 'did not offer an exhaustive definition of "testimonial" statements,' the court has since clarified that 'a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial' [citation]—that is to say, unless the statements are given in the course of an interrogation or other conversation whose '"primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution[.]"'" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1214, citing *Ohio v. Clark* (2015) 576 U.S. 237.) The California Supreme Court has

"identified six factors to consider in determining whether statements made in the course of police questioning were for the "'primary purpose of creating an out-of-court substitute for trial testimony" that implicates the confrontation clause.'" (*Chism, supra*, 58 Cal.4th at p. 1289.) "These are (1) an objective evaluation of the circumstances of the encounter and the statements and actions of the individuals involved in the encounter; (2) whether the statements were made during an ongoing emergency or under circumstances that reasonably appeared to present an emergency, or were obtained for purposes other than for use by the prosecution at trial; (3) whether any actual or perceived emergency presented an ongoing threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the interrogation had shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances under which it was obtained." (*Ibid.*)

Even assuming Lara can raise his Confrontation Clause challenge in the context of a section 1172.6 evidentiary hearing,[9] we conclude the trial court did not err by admitting Enrique's emergency room statement because it was nontestimonial and did not violate the Confrontation Clause. When Enrique made the statement, he was lying on a gurney in the emergency room with a gunshot wound to his stomach and blood still in his stomach area. Although Enrique was no longer in immediate danger from the shooter when he made the statement, the circumstances reasonably appeared

---

[9] The Attorney General argues Lara cannot raise his Confrontation Clause argument because the Sixth Amendment does not apply to a section 1172.6 evidentiary hearing. We need not decide that issue given our conclusion that Lara's Confrontation Clause argument is unavailing.

13

to be an ongoing emergency: two people had recently been shot in an alley in the course of a robbery and the assailants apparently were still unidentified and at large.[10] On these facts, there was still a possibility the unidentified assailants would attempt other armed robberies, would kill (or attempt to kill) other potential victims to avoid being identified, and thus "could pose an immediate threat to other persons." (See *Nelson, supra*, 190 Cal.App.4th at p. 1467 ["Although [declarant] was no longer in immediate danger from the shooter, there was still a possibility that the unidentified shooter could pose an immediate threat to other persons"].) Thus, we conclude Enrique's emergency room statement was nontestimonial and the circumstances here objectively indicate the primary purpose of Avila's questioning was to meet an ongoing emergency. We recognize approximately an hour and fifteen minutes had elapsed since the shooting when Enrique spoke to Avila in the emergency room, but that fact alone does not transform Enrique's statement into a testimonial statement under these circumstances.

Lara argues the circumstances of *People v. Cage* (2007) 40 Cal.4th 965 (*Cage*) are analogous to those here. In that case, a deputy sheriff was "dispatched to a residence on a report of a family fight," and the deputy found the defendant mother picking up broken glass with two small cuts on her hand. (*Id.* at p. 971.) About an hour later, the deputy found the defendant's son sitting on a curb about a mile or two away with a large cut on the side of his face. (*Ibid.*) The son was taken to a hospital by ambulance, and

---

[10] Lara does not argue that he or the shooter had been identified and arrested by the time Enrique made his emergency room statement. Nor would the record support such an argument. The record shows Lara had not yet been arrested when Enrique spoke to Avila, because Lara's incriminating statements to the confidential informant were not made until several days later.

14

the deputy "went to the hospital 'at a later point.'" (*Ibid.*) While the son was still in the emergency room, the deputy asked what had happened between the son and his mother, and the son said he and his mother had gotten into an argument, she began pushing him, he fell over a coffee table and the glass broke, and his mother cut him with a piece of glass while his grandmother held him. (*Id.* at pp. 971–972.) The son did not testify at his mother's trial, at which she was convicted of aggravated assault. (*Id.* at pp. 970, 973.)

The California Supreme Court held the son's statement to the deputy at the hospital was testimonial. (*Cage, supra*, 40 Cal.4th at pp. 984–986.) The Court noted, "by the time [the deputy] spoke with [the son] in the hospital, the incident that caused [the son's] injury had been over for more than an hour," and "[t]he alleged assailant and the alleged victim were geographically separated, [the son] had left the scene of the injury, and he thereafter had been taken to a remote location to receive medical treatment." (*Id.* at p. 985.) The Court explained the deputy's "clear purpose in coming to speak with [the son] at this juncture was not to deal with a *present emergency*, but to obtain a fresh account of *past events involving defendant* as part of an inquiry into possible criminal activity. Indeed, the form of [the deputy's question assumed that [the mother] might be the perpetrator of [the son's] injury." (*Ibid.*)[11]

Although *Cage* also involved a victim's statement to an officer in an emergency room, the circumstances here are distinguishable. Notably, the deputy in *Cage* already had identified the mother as the suspect and had spoken with her. (*Cage, supra*, 40 Cal.4th at pp. 971, 985; see also *Nelson,*

---

[11] The California Supreme Court also concluded the victim's statement to a physician treating him at the hospital was *not* testimonial. (*Cage, supra*, 40 Cal.4th at pp. 970–971, 986.)

15

*supra*, 190 Cal.App.4th at p. 1467 [distinguishing *Cage* as "involving a domestic disturbance . . . , *where the assailant was identified* and the geographic separation of the victim and the assailant would suggest the immediate threat to both the victim and the public was over"].) Unlike the circumstances of *Cage*, the identities and locations of the assailants here were unknown at the time of Enrique's statement, and there was no indication the assailants knew either of the two individuals that had been shot.

## B. Sufficiency of the Evidence

Lara argues that, if Enrique's statement is excluded, the remaining evidence is insufficient to sustain the judgment against him. Given our conclusion that the trial court did not err by admitting Enrique's statement, we need not reach that issue.

Additionally, Lara has not disputed on appeal the sufficiency of the evidence of his intent to kill if Enrique's emergency room statement is admissible. But he appears to assert the evidence was insufficient to show he was the accomplice in the alley. According to Lara, his incriminating statements to the confidential informant "were false and likely made to impress the informant or gain credibility within the gang," and although they "clearly fell within certain exception(s) to the rule against hearsay, they were clearly unreliable and subject to exclusion under Evidence Code section 1391, subdivision (a)(4)." We find this argument unavailing. Lara failed to assert a developed argument on appeal that his incriminating statements to the confidential informant should have been excluded, as the only authority he cites for this argument is "Evidence Code section 1391, subdivision (a)(4)," which does not exist. (See *People v. Ramirez* (2024) 104 Cal.App.5th 315, 329–330 ["to the extent that [defendant] may be arguing that [an officer] used

16

excessive force, this argument has been forfeited because [defendant] has not cited any relevant legal authority to support this claim, nor has he developed a cogent legal argument"].) Further, even assuming Lara may properly dispute whether he actually was the accomplice in the alley at the section 1172.6 evidentiary hearing,[12] substantial evidence supports the trial court's finding. Lara's incriminating statements were substantial evidence he was the accomplice, even if some aspects of his statements may have been embellished or inaccurate.

## DISPOSITION

The order denying Lara's petition is affirmed.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.

---

[12] The Attorney General argues it was improper for Lara to contest the sufficiency of the evidence of his identity at the section 1172.6 evidentiary hearing. We need not address that issue given our conclusion.